## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KIMAR FRASER, | ) | 3:20-CV-00071 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NOBERTO CARIBE, II, | ) | |
| *Defendant*. | ) | April 25, 2022 |

### RULING AND ORDER ON PLAINTIFF'S FIRST MOTION TO AMEND COMPLAINT TO JOIN A NEW PARTY

Sarala V. Nagala, United States District Judge.

Plaintiff Kimar Fraser, proceeding *pro se*, brought this action in January of 2020 against Norberto Caribe, II, alleging that Defendant subjected him to cruel and unusual punishment by failing to protect him from an assault by another prisoner while both were in a holding area at a state courthouse in Bridgeport, Connecticut, on November 7, 2018. ECF No. 1. The Court appointed pro bono counsel for Plaintiff, and Plaintiff's counsel appeared in the action in November of 2020. Trial had been set for April 26, 2022.

In the motion presently before the Court, Plaintiff, through counsel, seeks primarily to amend his complaint to join Antonio Santiago, Director of Security for the Connecticut Department of Correction ("DOC"), as a defendant, claiming that Santiago was responsible for Plaintiff's safety at the time of the alleged assault. Plaintiff argues that a DOC Administrative Directive he recently discovered while preparing for trial opens Santiago to liability for the incident in question. Defendant argues that Plaintiff's proposed claim against Santiago is time-barred and, as a result, Plaintiff's proposed amendment would be futile.

For the reasons described below, the Court agrees with Plaintiff that his proposed amendment relates back to the filing of his initial complaint. Plaintiff's motion to amend is

therefore GRANTED.  Discovery shall be reopened for a period of 90 days beginning the date of this ruling and order and ending July 25, 2022.

## I.        FACTUAL BACKGROUND

Plaintiff filed his original complaint on January 15, 2020.  Compl., ECF No. 1.  The complaint generally sets forth the following allegations.  On November 7, 2018, Plaintiff, who is African American and who was then a pretrial detainee placed in the general prison population, was transferred from Bridgeport Correctional Center to Bridgeport Superior Court for a scheduled court date.  *Id.* ¶¶ 2–3.  When Plaintiff arrived at the courthouse, he told Defendant Caribe that he did not feel safe because a prisoner who was designated as a Security Risk Group ("SRG") member had threatened him.  *Id.* ¶ 4.  Plaintiff requested that he not be placed in the same holding cell as the SRG member.  *Id.*  Caribe asked Plaintiff to identify the prisoner to whom Plaintiff was referring, and Plaintiff identified the other prisoner as "Ruggerio," an alleged member of the Aryan Brotherhood.  *Id.* ¶¶ 5–7.

Plaintiff alleges that Caribe had knowledge of Ruggerio's designation through a notation in Ruggerio's mittimus that allegedly required Ruggerio to be kept away from general population inmates.  *Id.* ¶ 8.  Nonetheless, according to Plaintiff, Caribe placed him in the same holding cell with Ruggerio after telling him to "deal with it," even though there were several vacant cells in which Plaintiff could have been placed.  *Id.* ¶¶ 9–10.  At approximately 2:20 p.m., Ruggerio attacked Plaintiff, punching him in the head and face.  *Id.* ¶¶ 11–12.  Plaintiff asserts that he continues to suffer from severe migraine headaches and post-traumatic stress disorder due to the assault. *Id.* ¶ 14.

As set forth in the Court's Initial Review Order, the complaint consists of a single claim pursuant to 42 U.S.C. § 1983, asserted against Caribe in his individual capacity only.  Plaintiff's § 1983 claim is governed by the Due Process Clause of the Fourteenth Amendment.

## II.    PROCEDURAL POSTURE

This case was previously set for trial beginning with jury selection on April 26, 2022.  On March 18, 2022, Plaintiff moved to amend his complaint to join Santiago as a defendant.  ECF No. 67.  Plaintiff asserts that he recently discovered DOC Administrative Directive 6.14, which pertains to SRGs.  The Directive generally discusses the responsibility of the Director of Security to designate individuals as SRG members and to manage their activities.  *See* DOC Admin. Dir. 6.14 ¶ 4.  It provides that the Director of Security be notified "prior to the movement" of any known SRG member.  *Id.* ¶ 21.  Additionally, it provides, in part, in a paragraph entitled "Movement outside the Facility," that "[f]or the purposes of court trips, . . . an inmate designated as a Security Risk Group Member shall not be permitted to be placed in any holding area with inmates that are not of the same classification."  *Id.* ¶ 22.  Plaintiff contends that, pursuant to this Directive, Santiago, as Director of Security for the DOC, was responsible for knowing Ruggerio's whereabouts, and for ensuring Plaintiff's movement and safety during Plaintiff's trip to court on November 7, 2018.  Plaintiff does not seek to add a new count against Santiago but, rather, seeks to incorporate him into the existing Fourteenth Amendment count of the complaint.  *See* ECF No. 67-2 ¶¶ 32–33.  On April 7, 2022, the Court vacated the April 26, 2022, jury selection date and the subsequent trial dates pending a decision on Plaintiff's motion to amend.  *See* ECF No. 81.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) governs amendments before trial.  Rule 15(a)(1) addresses time periods during which a party may amend its pleading once as a matter of course,

which have elapsed in this case.  Rule 15(a)(2) states that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Rule 15(a)(2) further provides that "[t]he court should freely give leave when justice so requires."  Addition of a party also implicates Federal Rule of Civil Procedure 21, which provides, in pertinent part, that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."  The standards governing motions to amend under Rule 15 "apply with equal force to motions to add parties under Rule 21." *Trs. of I.B.E.W. Loc. Union No. 488 Pension Fund v. Norland Elec., Inc.*, No. 3:11-CV-709 (CSH), 2013 WL 785333, at *1 (D. Conn. Mar. 1, 2013).

Rule 15(a)(2) is a "liberal" and "permissive" standard, and "'the only grounds on which denial of leave to amend has long been held proper' are upon a showing of 'undue delay, bad faith, dilatory motive, [or] futility.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (alteration in original) (quoting *Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)).[1]  Further, it is improper for the Court to deny a motion to amend based solely on delay or expense "absent a showing of bad faith or undue prejudice." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017).  "[M]ere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Id.* (alteration in original).

"The party opposing a motion to amend bears the burden of establishing that amendment would be futile." *Brach Fam. Found., Inc. v. AXA Equitable Life Ins. Co.*, No. 16-CV-740 (JMF), 2018 WL 1274238, at *1 (S.D.N.Y. Mar. 9, 2018).  "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Fed. R. Civ. P.] 12(b)(6)."

---

[1] *Sacerdote* addressed whether Rule 15(a)(2)'s liberal and permissive standard or Rule 16(b)'s "good cause" standard should apply to an amendment sought after a scheduling order's deadline for amendments has passed.  As long as the scheduling order does not set forth a date after which no further amendments would be permitted without good cause, Rule 15(a)(2)'s standard should apply. *Sacerdote*, 95 F.4th at 115.  Here, the Scheduling Order did not provide a date after which no further amendments would be permitted and after which the good cause standard would apply, and the parties do not argue that the good cause standard should apply. *See* ECF Nos. 67, 72.  Thus, the Court analyzes the proposed amendment under Rule 15(a)(2)'s more lenient standard.

4

*Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Accordingly, "a proposed claim is futile if, accepting the facts alleged by the party seeking amendment as true and construing them in the light most favorable to that party, it does not 'plausibly give rise to an entitlement to relief.'" *Brach Fam. Found., Inc.*, 2018 WL 1274238, at *1 (quoting *Ashcroft*, 556 U.S. at 679). A proposed claim is futile if it is time-barred by an applicable statute of limitations. *See Trakansook v. Astoria Fed. Sav. & Loan Ass'n*, No. 07-2224-CV, 2008 WL 4962990, at *2 (2d Cir. Nov. 21, 2008).

Once a statute of limitations has expired, a plaintiff may amend his complaint to add new parties "only if the amendment would 'relate back' to the date he filed his original complaint." *Soto v. Brooklyn Corr. Facility*, 80 F.3d 34, 35 (2d Cir. 1996). "Amended pleadings that meet the requirements of Rule 15(c) are considered to 'relate back' to the date of the original complaint." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (citing Fed. R. Civ. P. 15(c)). "Relation back under Rule 15 serves the interest in adjudicating claims on the merits when they are sufficiently related to the allegations in the original complaint to avoid unfair prejudice to the defense based on lack of notice." *Webb v. Armstrong*, No. 3:11-CV-1557 RNC, 2015 WL 1311292, at *2 (D. Conn. Mar. 23, 2015).

The Second Circuit has interpreted Rule 15(c)(1)(C)[2] as requiring that the following conditions be met in order for an amendment adding a new party to relate back to the original

---

[2] Specifically, Rule 15(c)(1)(C) provides that an amendment that "changes the party or the naming of the party against whom a claim is asserted" relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:  (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity. Fed. R. Civ. P. 15(c)(1)(C).

filing: "(1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party should have known that, but for a mistake of identity, the original action would have been brought against it; and . . . [4] the second and third criteria are fulfilled within [90] days[3] of the filing of the original complaint, and . . . the original complaint [was] filed within the limitations period." *Hogan*, 738 F.3d at 517 (first, second, fourth, and fifth alterations in original) (emphasis omitted).

"Since Congress did not enact a statute of limitations governing actions brought under § 1983, the courts must borrow a state statute of limitations." *Lounsbury v. Jeffries*, 25 F.3d 131, 133 (2d Cir. 1994). "Section 1983 actions arising in Connecticut . . . are governed by the three-year limitations period set forth in Conn. Gen. Stat. § 52-577." *Harnage v. Torres*, 665 F. App'x 82, 83 (2d Cir. 2016). The parties here do not dispute that a three-year statute of limitations applies and that it would have run on November 7, 2021. Accordingly, Plaintiff's proposed amendment to add Santiago is untimely unless it relates back to his initial complaint.

## IV.   DISCUSSION

The time for Plaintiff to amend the complaint under Rule 15(a)(1) as a matter of course has long passed. Accordingly, Rule 15(a)(2)'s standard applies, and Plaintiff may only amend his pleading with Defendant's consent or the Court's leave. Defendant does not consent to Plaintiff's proposed amendment, contending that the proposed amendment is futile because the claim against Santiago is time-barred and the proposed amendment does not relate back to the original complaint

---

[3] In *Hogan*, the Court indicated that the relevant limitations period was 120 days. 738 F.3d at 517. However, the relevant limitations period derives from Rule 4(m), which was amended, effective December 1, 2015, "to reduce the time for service from 120 days to 90 days." *See George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 443 n.8 (S.D.N.Y. 2016); *see also Terranova v. Johnson*, 444 F. Supp. 3d 477, 482 n.3 (W.D.N.Y. 2020) (discussing "Rule 15(c)(1)(C)'s requirement that [defendants] were put on notice of the lawsuit within 90 days of filing").

under Rule 15(c)(1)(C).  Defendant does not argue that any of the other factors counseling against amendment under Rule 15(a), such as undue delay, bad faith, dilatory motive, or prejudice, apply. Plaintiff argues that his proposed new claim is permissible because it satisfies the requirements of Rule 15(c).  Although this is a close question, the Court finds that Plaintiff's proposed claim against Santiago is not futile because it relates back to Plaintiff's original complaint.  The Court therefore grants Plaintiff's request to amend the complaint to add Santiago.

### A.  Rule 15(c)(1)(B) & (C):  Same Conduct, Transaction, or Occurrence

First, the Court finds that Plaintiff's claim against Santiago arises from the same conduct, transaction, or occurrence set out, or attempted to be set out, in the original complaint.  *See* Fed. R. Civ. P. 15(c)(1)(B) & (C).  The initial complaint generally alleges that, due to Caribe's inaction, Ruggerio, a known SRG member, was incorrectly placed into a holding cell with Plaintiff at the Bridgeport Superior Court on November 7, 2018, resulting in Plaintiff being assaulted by Ruggerio.  The gravamen of Plaintiff's complaint is a failure to protect him from a particular harm—placement in a cell with someone who should have been kept separate from him, pursuant to policy, and a resulting assault.  Plaintiff's proposed amended complaint alleges that Santiago shares responsibility for Plaintiff's placement in the same holding cell as Ruggerio on the day of the assault.  *See* ECF No. 67-1 ¶¶ 12–14, 32–35.  Although the proposed amended complaint expands the scope of liability for failing to prevent the assault, the allegations against Santiago still arise from the assault, and more specifically, the failure to keep Ruggerio separate from Plaintiff.

The Court is not swayed by Caribe's argument that the proposed amendment concerns "conduct different than that alleged in the original complaint," ECF No. 72 at 7.  The relevant conduct here is the failure of an official or officials charged with a duty to protect Plaintiff to actually protect him.  Framed in that manner, the addition of Santiago pertains to the same conduct

alleged in the complaint.  Additionally, there does not appear to be a serious dispute that the transaction and occurrence at issue is the failure to protect Plaintiff on November 7, 2018, and that the proposed addition of Santiago would pertain to that transaction and occurrence.  Accordingly, the Court finds that the "same conduct, transaction, or occurrence" requirement of Rule 15(c) is met here.

### B.  Rule 15(c)(1)(C)(i):  Notice

Next, "[i]n order for [a] plaintiff's amended complaint to relate back to the date of the original complaint, Rule 15(c) requires that [the] plaintiff demonstrate that [the proposed defendant] received notice of the lawsuit 'within the period provided by Rule 4(m)' so that he will not be prejudiced in defending th[e] action on the merits." *Velez v. Fogarty*, No. 06 CIV.13186 LAKHBP, 2008 WL 5062601, at *5 (S.D.N.Y. Nov. 20, 2008) (citing Fed. R. Civ. P. 15(c)(1)(C)(i)).  Plaintiff relies on two theories for his argument that Santiago received notice of this action.  First, Plaintiff argues that the DOC was informed of the physical altercation between Ruggerio and Plaintiff after it occurred.  Second, Plaintiff argues that Santiago received constructive notice because he would be represented in this action by the Connecticut Attorney General's Office, which also presently represents Caribe in this action.  Although the Court cannot conclude that Santiago received actual notice of this lawsuit, the Court agrees with Plaintiff that Santiago received constructive notice within the Rule 4(m) limitations period.

To begin, there is no evidence that Santiago received actual notice of this action within the period set forth in Rule 4(m).[4]  As the initial complaint did not name Santiago, he was not served with the suit.  Nor has Santiago been involved in discovery in this matter, such that he would know

---

[4] In an ordinary case, the 90-day period from Rule 4(m) would run from the date the complaint was filed.  Because prisoner cases undergo the initial review process pursuant to 28 U.S.C. § 1915A, however, service was not ordered in this matter until February 11, 2020.  ECF No. 7.  Thus, the 90-day period would begin on February 11, 2020, and expire on May 11, 2020.

about the action.  For instance, this case is not like *Abdell v. City of New York*, 759 F.Supp.2d 450, 455 (S.DN.Y. 2010), in which the defendant whom the plaintiffs sought to add had been deposed in the case less than two months after the case was filed, and had testified that he participated with the other defendants in the arrest decision that formed the basis of the claim.  Here, there is nothing before the Court to suggest that Santiago was in any way involved in the litigation, through discovery or otherwise, within the Rule 4(m) period, such that he would have had actual notice of this case.

In an effort to prove Santiago had actual notice, Defendant points to a Judicial Marshal Service Incident Report dated November 9, 2018, indicating that "the DOC" was "notified . . . about the incident" between Plaintiff and Ruggerio and "made arrangements to have both inmates transported back to the county jail on separate trips."  ECF No. 75-1 at 3.  The incident report does not, however, demonstrate that the DOC was notified of the pending *lawsuit*, as Rule 15(c)(1)(C)(i) requires.  The plain text of Rule 15(c)(1)(C)(i) references receiving notice "of the *action*." (emphasis added).  This is distinct from receiving notice of the facts underlying the action.  Indeed, the incident report is dated November 9, 2018, more than a year before Plaintiff filed his original complaint on January 15, 2020.  Therefore, the incident report presents no clear indication that the DOC, much less Santiago, was actually notified of this action.  Accordingly, Plaintiff has failed to demonstrate that Santiago received actual notice of this suit within the Rule 4(m) period.

Notwithstanding Santiago's lack of actual notice, the notice requirement of Rule 15(c)(1)(C)(i) may be satisfied if Santiago received constructive notice of this suit within the Rule 4(m) period.  Plaintiff argues that Santiago received constructive notice because he would be represented in this action by the state Attorney General's Office, which also represents Caribe. "Under the constructive notice doctrine, the court can impute knowledge of a lawsuit to a new

defendant government official through his attorney, when the attorney also represented the officials originally sued, so long as there is some showing that the attorney[s] knew that the additional defendants would be added to the existing suit." *Pape v. Bd. of Educ. of the Wappingers Cent. Sch. Dist.*, No. 07CV8828(KMK), 2009 WL 3151200, at *13 (S.D.N.Y. Sept. 29, 2009) (alteration in original). "The relevant inquiry for determining whether such constructive notice should be based on 'sharing of counsel' is whether counsel 'knew or should have known' within the limitations period that the additional defendants would be added." *Samuels v. Dalsheim*, No. 81 CIV. 7050 (PKL), 1995 WL 1081308, at *14 (S.D.N.Y. Aug. 22, 1995), *report and recommendation adopted*, No. 81 CIV. 7050 (PKL), 1995 WL 555682 (S.D.N.Y. Sept. 19, 1995) (quoting, in part, *Gleason v. McBride*, 869 F.2d 688, 693 (2d Cir. 1989)). As a result, "in the majority of cases in this Circuit applying the constructive notice doctrine, the attorneys have clear knowledge of the identity of the unidentified defendant, within the limitations period, such that it would be logical to assume that a reasonable attorney would either (1) inform his client of the prospective lawsuit or (2) takes steps to begin preparing a defense." *Velez*, 2008 WL 5062601, at *6.

In this case, although the issue presents a close question, the Court finds that the potential representation of Santiago by the state Attorney General's Office, coupled with the Attorney General's representation of Caribe in this action, provided Santiago with constructive notice of this lawsuit for purposes of Rule 15(c). A search of case dockets in this district reveals that Santiago, as Director of Security for the DOC, is commonly sued for claims relating to inmates' SRG issues. *See, e.g.*, Complaint, *Pena v. Cook*, No. 3:19-cv-825 (KAD) (D. Conn. May 30, 2019), ECF No. 1; Complaint, *Doyle v. Santiago*, No. 3:19-cv-901 (MPS) (D. Conn. June 11, 2019), ECF No. 1; Complaint, *Trimmier v. Cook*, No. 3:20-cv-396 (KAD) (D. Conn. Mar. 25,

2020), ECF No. 1.  In those suits, Santiago is generally represented by the state Attorney General's Office.  *See, e.g.*, Notice of Appearance, *Pena*, No. 3:19-cv-825 (KAD) (D. Conn. Aug. 29, 2019), ECF No. 22; Notice of Appearance, *Doyle*, No. 3:19-cv-901 (MPS) (D. Conn. Dec. 30, 2019), ECF No. 18; Notice of Appearance, *Trimmier*, No. 3:20-cv-396 (KAD) (D. Conn. Jan. 27, 2021), ECF No. 26.[5]  Here, Plaintiff's initial complaint specifically alleges that Ruggerio was "a designated Security Risk Group member" and therefore should have been kept separate from Plaintiff.  Compl. ¶¶ 4, 8.  Moreover, approximately three weeks before the Attorney General's Office appeared in this case, it appeared in a factually analogous case in which DOC officials had originally been named as defendants.  *See Lang v. Conn. Dep't of Corr./Super. Courthouse at Waterbury, Conn.*, No. 3:19CV1967 (KAD), 2020 WL 1676939, at *1–2 (D. Conn. Apr. 6, 2020) (indicating that DOC correction officers had been named in action "stemming from [plaintiff's] placement . . . in a Waterbury Courthouse cell with another prisoner, who sexually assaulted him" despite a "Keep Separate" notification in the inmates' computer profiles); Notice of Appearance, *Lang*, No. 3:19-cv-1067 (KAD) (D. Conn. April 15, 2020), ECF No. 14.[6]  In light of these circumstances, the Court finds that the Attorney General's Office knew or should have known that Santiago, as the official at the DOC responsible for SRG issues, would likely eventually be sued in this action.

---

[5] Based on the Court's docket search, it appears that the most common category of SRG-related cases in which Santiago is named are cases *challenging* SRG designations.  While the Court acknowledges the differences between such cases and the instant case, the Court nonetheless finds that the presence of Santiago as a defendant in many cases concerning SRG issues, coupled with the fact that Plaintiff relies exclusively on Ruggerio's alleged SRG designation as the basis for his claim that he should have been kept separate from Ruggerio, should have signaled to the state Attorney General's Office that Santiago would be sued in this action.

[6] The Court acknowledges that the plaintiff in *Lang* ultimately did not proceed against the DOC officials he originally named as "Doe" defendants.  *See Lang*, 2020 WL 1676939, at *1–2 & n.3.  However, the reason for this appears to be that these defendants could not be served because the plaintiff failed to identify them in his initial complaint.  *Id.*  The plaintiff then chose not to include them in his amended complaint.  *Id.*  The Court finds no reason why the absence of the DOC officials from the plaintiff's amended complaint in *Lang* would have suggested to the Attorney General's Office that DOC officials were not potentially liable for the plaintiff's claims in that action (and, by extension, the claims in this action).

The prevalence of suits against Santiago for SRG-related claims should have signaled to the Attorney General's Office that he would be sued in this case. The Attorney General's Office routinely defends similar claims brought by prisoners against state officials, including Santiago. Given the Attorney General's frequent appearances in such cases and the office's likely knowledge of the relevant provisions of Administrative Directive 6.14, it would be logical to assume that the office would have considered the potential liability of DOC officials and either informed Santiago of this suit or taken steps to begin preparing his defense. *See Velez*, 2008 WL 5062601, at *6. The Court therefore finds that Santiago was on constructive notice of this action when the Attorney General's Office received Plaintiff's initial complaint, which was within the limitations period in Rule 4(m).[7]

The Court acknowledges that whether Santiago received constructive notice in this case is a close question. Indeed, this case is distinguishable from cases Plaintiff cites and others the Court has found, in which the standard for constructive notice was quite clearly met. *See, e.g.*, *Vasquez v. Mill*, No. 03 CIV. 3905 RJH, 2006 WL 2789914, at *6 (S.D.N.Y. Sept. 25, 2006) (finding that because it was clear from the complaint that the plaintiff had intended, but failed, to correctly name his arresting officers, the U.S. Attorney's Office knew or should have known that the true arresting officers would ultimately be named); *Muhammad v. Pico*, No. 02 CIV.1052 AJP, 2003 WL 21792158, at *20 (S.D.N.Y. Aug. 5, 2003) (finding constructive notice where Assistant Attorney General was on notice to prepare a defense for a previously unnamed defendant whose actions were specifically discussed in the complaint and who was "easily identifiable" from the allegations). However, where, as here, the Attorney General's Office routinely represents a

---

[7] The Attorney General's Office was on notice of this suit, at the very latest, on May 7, 2020, when an Assistant Attorney General appeared in this case on behalf of Caribe. *See* ECF No. 9. As noted, the Court has determined that the Rule 4(m) period in this case ended on May 11, 2020.

specific state official in a category of cases raising issues related to SRG members, and the Attorney General's Office then appears in a suit that falls into that category, it is reasonable to find that the state official was on constructive notice of that suit through the knowledge of his attorney. *See Maccharulo v. Gould*, 643 F. Supp. 2d 587, 594 (S.D.N.Y. 2009) (state Attorney General, as a government official, is "charged with knowing the law" (quoting *Soto*, 80 F.3d at 36)).

The Court is unpersuaded by Defendant's arguments to the contrary. Defendant contends, without citation to any authority, that "[t]he fact that an assistant attorney general has knowledge of a lawsuit against one state agency does not ascribe that[] knowledge to all other state agencies." ECF No. 72 at 8. Certainly, Defendant is correct that a government attorney's knowledge of a suit against one agency does not serve as constructive notice of the suit to *all other* state agencies. But, as noted, the Attorney General's Office routinely represents Santiago in cases involving SRG-related issues, and here, Ruggerio's SRG designation is integral to the claim in Plaintiff's initial complaint. As a result, it is reasonable to find that notice of this suit to the Attorney General's Office provided constructive notice to Santiago, regardless of his state agency. Moreover, contrary to Defendant's implication, Plaintiff's theory of liability with respect to Santiago does not differ much at all from his theory of liability with respect to Caribe. In both instances, Plaintiff alleges that, pursuant to 42 U.S.C. § 1983, Caribe and Santiago are liable for violations of his Fourteenth Amendment rights due to their respective roles in failing to keep Ruggerio separate from Plaintiff. ECF No. 67-2 ¶¶ 1, 28–35.

In any event, the relevant inquiry is whether Santiago will avoid prejudice because his counsel knew or should have known that he would be sued. Here, the Court answers that question in the affirmative. While Defendant contends that Santiago will be prejudiced by Plaintiff's

proposed amendment, he does so in a largely conclusory fashion that is insufficient to surmount the arguments to the contrary.

The Court's conclusion that Santiago had constructive notice of the suit also aligns with the purposes of the relation back doctrine because it "serves the interest in adjudicating claims *on the merits* when they are sufficiently related to the allegations in the original complaint to avoid unfair prejudice to the defense based on lack of notice." *Webb*, 2015 WL 1311292, at *2 (emphasis added). For these reasons, the Court finds that Plaintiff's proposed amendment satisfies the notice requirement of Rule 15(c)(1)(C)(i).

### C.   Rule 15(c)(1)(C)(ii):  Mistake

The Court further finds that Santiago, through the state Attorney General's Office, either knew or should have known within the Rule 4(m) period that he would have been named in this action but for a mistake concerning his identity. *See* Fed. R. Civ. P. 15(c)(1)(C)(ii). Therefore, Plaintiff's proposed amendment satisfies the requirements of Rule 15(c)(1)(C)(ii). First, the Court finds that Plaintiff's failure to recognize Santiago's potential liability qualifies as a "mistake" for purposes of Rule 15(c). Second, the Court finds that Santiago knew or should have known that this action would have been brought against him, but for Plaintiff's mistake.

To begin, the U.S. Supreme Court has counseled against interpreting "mistake" narrowly in the Rule 15(c) context. *See Krupski v. Costa Crociere S. p. A.*, 560 U.S. 549 (2010). In *Krupski*, the Court discussed the hypothetical situation in which a plaintiff "know[s] generally what party A does while misunderstanding the roles that party A and party B played in the 'conduct, transaction, or occurrence' giving rise to her claim." *Id.* The Court reasoned that "[i]f the plaintiff sues party B instead of party A under these circumstances, she has made a 'mistake concerning the proper party's identity' notwithstanding her knowledge of the existence of both parties." *Id.*

Courts in this Circuit have interpreted *Krupski* to hold that "a mistake 'concerning the proper party's identity' under Rule 15(c) includes lack of knowledge regarding the conduct or liability of that party." *See Abdell*, 759 F. Supp. 2d at 457; *see also Berry v. Vill. of Millbrook*, No. 09-CV-4234 KMK, 2010 WL 3932289, at *5 (S.D.N.Y. Sept. 29, 2010) ("The law in the Second Circuit is clear that the relevant mistake of the plaintiff may be a 'misapprehen[sion] [of] the identity of the person he wished to sue (a factual mistake), or [a] fail[ure] to understand the legal requirements of his claim (a legal mistake).'" (alterations in original)).[8]

The Court finds that Plaintiff's failure to recognize that Santiago may be liable for his claims constitutes a "mistake" pursuant to *Krupski* and its progeny. Plaintiff persuasively argues that, because he did not know about Administrative Directive 6.14, he did not understand Santiago's conduct or liability with respect to the claims in the original complaint. Moreover, the Court is cognizant that Plaintiff's previous *pro se* status at the time of filing of the complaint might increase the likelihood that his failure to name Santiago was the product of a mistake recognized under the relation back doctrine. *See Berry*, 2010 WL 3932289, at *5 ("Courts often allow plaintiffs (and especially *pro se* plaintiffs) to amend if their initial claim was legally insufficient because they named the wrong public official or government entity based on a misunderstanding of the legal prerequisites for bringing suit against particular government defendants."). Accordingly, the Court concludes that Plaintiff's failure to initially discover Santiago's responsibilities and potential liability under Administrative Directive 6.14 constituted a "mistake" for purposes of Rule 15(c).

---

[8] The Court's holding is not inconsistent with *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466 (2d Cir. 1995), *modified*, 74 F.3d 1366 (2d Cir. 1996), in which the Second Circuit held that amendments to John Doe complaints to add parties' real names do not relate back under Rule 15(c)(1)(C) because such amendments were not made "to correct a mistake but to correct a lack of knowledge." As recognized in *Ceara v. Deacon*, 916 F.3d 208, 212 (2d Cir. 2019), *Barrow* "illustrates the rule in this Circuit regarding the relation back of amended John Doe complaints." This case is not a John Doe case. Additionally, *Ceara* reiterates the "special solicitude" a court is required to give unrepresented, incarcerated litigants. *Id.* at 213.

In light of the determination that Plaintiff's failure to recognize Santiago's potential liability constituted a "mistake" for purposes of Rule 15(c), the only remaining question is whether Santiago "knew or should have known that, absent some mistake, the action would have been brought against him." *Krupski*, 560 U.S. at 549. "After *Krupski*, the focus of the Rule 15 inquiry is a potential defendant's reasonable beliefs regarding whether a plaintiff failed to name him because of a mistake." *Abdell*, 759 F. Supp. 2d at 457 (emphasis omitted).

For reasons similar to those discussed above with respect to notice, the Court finds that Santiago, through his prospective representation by the state Attorney General's Office, knew or should have known that Plaintiff failed to name him due to a mistake. *See Fleming v. Dep't of Just.*, No. CV-90-0896 CPS, 1993 WL 16117, at *3 (E.D.N.Y. Jan. 20, 1993) ("[T]he new parties knew or should have known, *through the common government attorney* that, but for a mistake in identity, the action would have been brought against the newly named defendants." (emphasis added)). As explained above, the Attorney General's Office frequently represents Santiago in SRG-related lawsuits. Given the prevalence of such claims and Plaintiff's initial *pro se* status, it is logical to assume that, had Plaintiff understood Santiago's potential liability, he would have chosen to sue him in this instance. And Santiago, through his attorney, should have known that, but for Plaintiff's mistake, he would have been sued originally. *See id.* (granting leave to amend where omission of police officers from *pro se* plaintiff's original complaint "reflect[ed] more likely a mistake than a tactical judgment about the propriety of suing the individual police officers").

In sum, Plaintiff's failure to recognize Santiago's potential liability falls within the meaning of "mistake" pursuant to *Krupski*, its progeny, and other precedent in this Circuit. Santiago, through his representation by the Attorney General's Office, knew or should have known that, but for Plaintiff's mistake, he would have been named in this suit. Accordingly, Plaintiff's

proposed amendment satisfies the requirements of Rule 15(c)(1)(C)(ii) and, as described above, the other requirements of Rule 15(c)(1)(C).

## V.    CONCLUSION

For the reasons described herein, Plaintiff's motion to amend is GRANTED pursuant to Federal Rule of Civil Procedure 15(a)(2).   Plaintiff's request to refine and streamline the allegations of the complaint is likewise GRANTED absent objection from Defendant Caribe.  The Clerk is directed to docket ECF No. 67-2, which shall serve as the operative complaint in this action, as Plaintiff's Amended Complaint.  Defendants shall file a responsive pleading to the Amended Complaint by May 16, 2022.  Discovery shall be reopened for a period of 90 days beginning the date of this order and ending July 25, 2022.  Any dispositive motions should be filed by August 24, 2022.  The Court will convene a status conference with the parties to set a new trial date.

**SO ORDERED** at Hartford, Connecticut, this 25th day of April, 2022.

    /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE